Henry Gr. Smith, J.,
delivered the opinion of the Court.
*466 Assumpsit for the price of cotton, etc., sold and delivered in 1862, by Thomas to Jones; general issue, verdict and judgment for Thomas; and appeal in error to this Court, by Jones.
The supposed error is found in the charge of the .'Circuit Judge to the jury.
-Jones’ defense was, that he had paid and settled •the debt not long after it was contracted. It appeared that his alleged payment was in part, $400 in Confederate currency;' and upon the evidence, a question to the jury was, whether Thomas accepted the currency in fact, and -whether such acceptance ’ was voluntary, or done under the stress of threats and intimidation.
The Court, among other things, charged the jury, that, if the contract between the parties had been executed, and the plaintiff received payment in Confederate currency, taking the same cheerfully and . of his own free will and accord, and acknowledging the same a satisfaction, or settlement of the indebtedness of the defendant, then the plaintiff would not be entitled to a verdict, but the verdict should be for the defendant. If, however, the plaintiff had received the Confederate currency by reason of intimidation, or on account of fraudulent representations made to him by the defendant, this would not be a legal execution of the contract, and the plaintiff would be entitled to recover.
The obvious force of these instructions upon the mind of the jury, is, that the acceptance of Confederate currency in payment and settlement of a debt, must be, on the part of the creditor, done cheerfully and of his own free will and accord, and without any in *467 timidation; otherwise, such acceptance will not he effective to bar action by the creditor to recover the debt as unpaid and unsettled. In such sense, the instructions were erroneous.
This Court held, in Hanly vs. Franklin, 3 Cold., 472, that the Courts will not give their aid, at the instance of the plaintiff, to set aside the satisfaction of an execution, where the Sheriff had received from the debtor Confederate currency, in payment of the execution, and had returned the execution satisfied, and had paid over the currency to the plaintiff, who had voluntarily received it in satisfaction of the debt. The principle upon which the Court so ruled in the case cited, is what is commonly designated, the public policy. The public good demands now, as in the ordinary conditions of life it has always done, the discouragement of litigation, the prevention of strifes and animosity, and the protection and maintainance of the peace, repose and harmony of the people. Upon this principle, therefore, the Court thinks it proper, in respect of executed contracts, and settled and ended transactions, to deny the aid of the law to persons seeking to open and disturb contracts and transactions of the kind, although predicated upon Confederate currency.
Upon the same principle, public policy, are based the rulings of this Court in regard to executory contracts, and unsettled transactions. From the beginning, and constantly, the Court has held, that the aid of the law will not be given .to parties seeking to enforce, or uphold executory contracts and unsettled transactions, the consideration or basis of which was *468 the Confederate currency. The aid of the Court is refused in such cases, not alone on the notion of the illegality of the consideration, nor upon the motive of favor or disfavor, to one or the other party. The ground of the ruling of the Court, is here also, ‘public policy. The Confederate currency was issued, circulated and used, for the purpose of maintaining the rebellion, and was, in fact, a most tremendous engine of power and support to the rebellion, and without which, indeed, the opinion may be well entertained, its existence would have been feeble and brief. Hence, in the contemplation of the National Government, and of the Courts of the State loyal to, and existing by, the power of that Government, it is not possible to view the currency otherwise than injurious, mischevious and illegal' to the last degree. And it followed as an inevitable conclusion, that the Courts of the State could give no aid to the enforcement of executory contracts, the consideration whereof, was the vicious currency. All this on the principle of public policy.
Giving thus to the payment and settlement of debts in Confederate currency, the force and effect of ordinary payment and settlement of debts, the step to the conclusion is close and inevitable, that the causes which will be allowed to invalidate and annul payments and settlements in Confederate currency, must be nearly or quite the same as those which will vitiate payments and settlements not tainted with that currency. Mistake, fraud, duress, and the like, generally invalidate whatever contracts and transactions they are instrumental in procuring to be made or done. And of course, *469 such fraud, mistake, duress, or the like, will easily invalidate payments and settlements made in the Confederate currency. Mere unwillingness, however, to accept the currency in payment and settlement of the debt, cannot be all wed to invalidate the payment and settlement, if the creditor in fact, accepted the currency as payment and settlement of the debt. Something more than unwillingness must exist in the mind, or operate on the will of the creditor, to authorize the payment of the currency to be treated as a nullity. The degree of terror or force necessary to constitute the duress which will invalidate the acceptance of the currency as payment, is not easy to define. The stress of terror or force upon the creditor, which would fall much short of duress in the legal sense, in the condition of peace, the prevalence of law, and the readiness of the officers of the law and of the people to give protection and redress to the injured, and when the sense of security and safety gives confidence and courage, may fairly and properly be deemed duress, in the midst of civil war, when soldiers and marauders traverse the country uncontrolled and uncontrollable, and the general terror so paralyzes every man that none will give aid or defense to another; and when a temper of violent intolerance, as an epidemic, exasperates the people against those who incur' their displeasure, and unpopular creditors, or persons doing unpopular acts, are justly overwhelmed with the sense of wrong, peril and helplessness. In the latter condition of life, a much less degree of actual and present force or *470 terror, will constitute duress, than in tbe condition of peace, security, and protection designated in the former.
The opinion of the Court is, that mere unwillingness to receive the currency in payment and settlement, will not, if the currency be actually received in payment and settlement, be enough to invalidate the acceptance of thé currency as payment. The unwillingness must be of the degree and character which authorizes the Courts to treat the acceptance and payment as void, or voidable, upon the principles applicable to payments not tainted with Confederate currency.
It is proper to say, that the Court does not now undertake to settle, that a partial payment in Confederate currency, will be avoidable pro tanto, in an action by the creditor to recover the debt, where a balance remains unpaid. It is time enough to settle, when the case arises, what, if .any, shall be the effect of a partial payment in the vicious currency, when a balance of the debt remains unpaid, and the contract or transaction remains not wholly executed or ended.
The Circuit Court excluded the defendant from making proof proposed by him, that the plaintiff used the currency received from the defendant, in the purchase of property by the plaintiff, and in the payment of his debts. Such pr.oof was competent in one aspect of the case, and that is, whether, in fact, the plaintiff did accept or' consent to accept the currency in payment of his demand. Though he may have declined in the first instance, to accept the currency as payment, when offered to and left with him by the de *471 fendant, yet, if afterwards, tbe plaintiff used it in tbe purchase of property or payment of debts, such facts were proper to go to tbe jury, to give such weight as they might think proper, as tending to show that the-plaintiff did accept the currency, at the time when left with him by the defendant, or afterwards, in payment and settlement of his demand.
Reverse the judgment, and send the cause back for a new trial.